UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANDRAE J. EVANS,

      Plaintiff,

v.

TOWN OF IRONDEQUOIT, *et al.*,

      Defendants.

**DECISION AND ORDER**

25-CV-6766-MAV

---

On December 12, 2025, *pro se* Plaintiff Andrae J. Evans filed a complaint against the Town of Irondequoit, John Perticone, Peter Wehner, Ann Cunningham, Grant Malone, and John/Jane Does 1-10 along with a motion for leave to proceed *in forma pauperis* ("IFP"), ECF No. 2, and a motion for a temporary restraining order ("TRO") and a preliminary injunction, ECF No. 4. On December 19, the Court denied Plaintiff's IFP application, and Plaintiff paid the filing fee. ECF Nos. 4–5. Defendants answered Plaintiff's original complaint on February 18, 2026, ECF No. 7, Plaintiff filed a timely amended complaint, ECF No. 10; Fed. R. Civ. P. 15(a)(1)(B), and Defendants filed an answer to Plaintiff's amended complaint, ECF No. 12.

Plaintiff's motion for a TRO and preliminary injunction is denied. Plaintiff has failed to demonstrate a likelihood of success on the merits or a serious question on the merits to warrant preliminary injunctive relief. Given his *pro se* status, Plaintiff is afforded leave to amend his complaint within 30 days of this Decision and Order.

## BACKGROUND

Plaintiff was elected as the Town Supervisor of Irondequoit in November 2023, his term starting January 1, 2024. ECF No. 4 at ¶ 13; ECF No. 10 at 4. When his original filings were submitted, his term as Town Supervisor had not yet ended on December 31, 2025, but Plaintiff had lost re-election to the position, which, Plaintiff contends, was caused by Defendants' unconstitutional activities. *See, e.g.,* ECF No. 10 at 2, 4, 11; ECF No. 4 at 4–5. Specifically, Plaintiff alleges that the named individual Defendants—Perticone, Wehner, Malone, and Cunningham—were members of the Irondequoit Town Board (collectively, the "Town Board Defendants") and "participated in, approved, and authorized" the following unconstitutional actions, ECF No. 10 at 4–5:

- issuing unlawful censures without due process;
- stripping or restricting statutory executive authority;
- imposing physical and electronic lockouts from Town facilities and systems;
- isolating Plaintiff from Town staff through formal and informal directives; and
- disseminating government-created stigma through official channels.

ECF No. 4 at ¶ 4(a)–(e). Plaintiff makes no factual allegations against John/Jane Doe Defendants, nor any factual allegations against the Town of Irondequoit to support municipal liability. *See* ECF Nos. 1, 4, 10.

Plaintiff's motion for preliminary relief alleges that the Town Board Defendants resisted Plaintiff's attempts to "require[] compliance," "refuse[] unlawful actions," and "insist[] on transparency" by "initiat[ing] a coordinated effort to neutralize Plaintiff's authority" through, *inter alia*, a "procedurally defective

'independent review'" in 2024 and two censures in 2025 that resulted in limitations on Plaintiff's authority and access as Town Supervisor. ECF No. 4 at ¶¶ 14–18.

Plaintiff's underlying action raises claims of First Amendment retaliation and violations of procedural due process. ECF No. 10 at 12–14. His original complaint also raised claims of, *inter alia*, substantive due process violations, equal protection violations, and a hostile work environment, *see* ECF No. 1 at 61–137. The Court views any claims raised only in Plaintiff's original 142-page complaint as moot when resolving his pending request for preliminary injunctive relief. *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) (an amended complaint completely replaces the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect"). However, in light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to amend his March 9, 2026 complaint within 30 days of this Decision and Order to revive any prior claims and/or otherwise amend his complaint.

## LEGAL STANDARD

In the Second Circuit, the same legal standard governs the issuance of preliminary injunctions and TROs. *Loc. 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Bragg v. Jordan*, 669 F. Supp. 3d 257, 266 (S.D.N.Y. 2023), *appeal dismissed sub nom. Bragg v. Pomerantz*, No. 23-615, 2023 WL 4612976 (2d Cir. Apr. 24, 2023). A party seeking a TRO and/or a preliminary injunction must show "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a [TRO and/or

preliminary injunction] is in the public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).

The Court construes *pro se* pleadings liberally and interprets them to raise the strongest arguments that they suggest. *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023). Nonetheless, "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006); *accord McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, No. 22 Civ. 1138, 2023 WL 5211054, at *5 (S.D.N.Y. Aug. 13, 2023).

Here, Plaintiff's motion seeks the following:

- Enjoining Defendants from enforcing, publishing, or relying upon the censures issued in January and April 2025 and related actions;

- Restoring Plaintiff's statutory authority, *see* "Town Law §§ 29–30," and his access to Town facilities, systems, staff, and communications;

- Enjoining Defendants from interfering with Plaintiff's ability to perform duties as Town Supervisor;

- Enjoining Defendants from retaliating and discriminating against Plaintiff to deprive him of his constitutional rights;

- Prohibiting Defendants from using municipal communication channels to disseminate misleading, retaliatory, or stigmatizing statements; and

- Enjoin the newly elected Town Supervisor from taking office pending a hearing.

*See* ECF No. 4 at 4–5; ECF No. 4-1 at 1–2. Plaintiff's motion for a TRO and a preliminary injunction must be denied.

## DISCUSSION

Plaintiff has not demonstrated a likelihood of success on the merits or a serious question on the merits to warrant preliminary injunctive relief. *See N. Am. Soccer League, LLC*, 883 F.3d at 37. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). There is "no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676). "[A] local government [such as the Town of Irondequoit] may not be held liable under § 1983 unless the challenged action was performed pursuant to a municipal policy or custom." *Marozzi v. Catlin*, No. 24-CV-6489 EAW CDH, 2026 WL 63114, at *8

(W.D.N.Y. Jan. 8, 2026) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)).

## I.    First Amendment Retaliation

"Generally, a private citizen bringing a First Amendment retaliation claim must allege that '(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' action effectively chilled the exercise of his First Amendment right.'" *Libbey v. Vill. of Atl. Beach*, 982 F. Supp. 2d 185, 212 (E.D.N.Y. 2013) (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). The First Amendment "affords a degree of protection to public employees to exercise the right of free speech without risk of retaliation by the State employer if the employee's speech in question is 'on matters of public interest.'" *Ricciuti v. Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016) (quoting *Lynch v. Ackley*, 811 F.3d 569 (2d Cir. 2016)). Nevertheless, the Supreme Court has carved out three exceptions: (1) "speech about *personal* matters, as opposed to 'matters of public concern,' is not protected from retaliation," *id.* at 168 (quoting *Connick v. Myers*, 461 U.S. 138 (1983)); (2) "even speech on matters of public concern is not protected from retaliation unless the employee's First Amendment interests outweigh the government employers' legitimate interests in efficient administration," *id.* (quoting *Pickering*, 391 U.S. at 568); and (3) "speech made by employees 'pursuant to . . . official duties' rather than 'as a private citizen' . . ." is not protected, *id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410 (2006)).

6

In other words, "[t]o be protected, a public employee's speech must be made as a private citizen 'and not in her role as employee' or 'pursuant to official duties.'" *Thomas v. Town of Se.*, 336 F. Supp. 3d 317, 329 (S.D.N.Y. 2018) (quoting *Nagle v. Marron*, 663 F.3d 100, 106 (2d Cir. 2011)). "Accordingly, speech that is 'required by, or included in, [his] job description,' or is 'part-and-parcel of his concerns' about his ability to 'properly execute his duties' is not protected." *Id.* (quoting *Nagle*, 663 F.3d at 106–07).

Here, Plaintiff has not made clear allegations of what "speech" or statements he deems protected, and what he does allege as a general matter stems from his work pursuant to his official duties as Town Supervisor. *See, e.g.,* ECF No. 6–11. Therefore, Plaintiff has not established he had an interest protected by the First Amendment. *See Ricciuti*, 834 F.3d at 167; *see also e.g., Thomas v. Town of Southeast.*, 336 F. Supp. 3d 317, 329 (S.D.N.Y. 2018) (granting summary judgment for defendants where plaintiff, a Town employee, failed to demonstrate that any statements of his at issue were made "as a private citizen as opposed to in his capacity as a Town employee" (citing *Nagle*, 663 F.3d at 106–07 (speech that is "required by, or included in, his job description, or is part-and-parcel of his concerns about his ability to properly execute his duties is not protected" by the First Amendment (quotation and brackets omitted))); *Langton v. Town of Chester*, 168 F. Supp. 3d 597, 605 (S.D.N.Y. 2016) ("Because Plaintiff's speech was 'part-and-parcel' of her job function as a [volunteer] trustee [on the Town Library Board], the Court finds that it is not protected under the First Amendment and dismisses Plaintiff's [First Amendment] retaliation claim.").

For at least these reasons, Plaintiff's pleaded claims of First Amendment retaliation cannot reasonably support awarding preliminary injunctive relief.

## II.    Violations of Procedural Due Process

"In order to establish a due process violation of this sort, plaintiff must show that state action deprived [him] of a property interest protected by the Fourteenth Amendment." *Velez v. Levy*, 401 F.3d 75, 85, 87 (2d Cir. 2005). "While property interests are constitutionally protected, they are not generally constitutionally established; rather, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Id.* (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "Thus, only where a plaintiff can demonstrate that state law confers 'a legitimate claim of entitlement' to a particular position will a property interest in that position arise." *Id.* (quoting *Roth*, 408 U.S. at 577) ("Velez lacks a constitutionally cognizable property interest in her employment as an elected official.").

Here, Plaintiff challenges the "tangible restrictions" resulting from the two 2025 censures, "affecting Plaintiff's access, supervision, and communications" as Town Supervisor and ultimately foreclosing his re-election. *E.g.*, ECF No. 10 at 13. He does not challenge "the expressive vote" of the two censures themselves, but the "tangible restrictions" that flowed therefrom, which "were implemented without neutral adjudicated safeguards prior to enforcement." *Id.* Plaintiff has alleged no facts to plausibly demonstrate that he had an entitlement to his elected position as

8

Town Supervisor that was protected by the Due Process Clause. Supreme Court and Second Circuit precedent are clear that Plaintiff lacks a constitutionally cognizable property interest in his former elected office. *See, e.g., Velez*, 401 F.3d at 87–88.

In the Supreme Court's decision in *Taylor and Marshall v. Beckham*, 178 U.S. 548 (1900), "the governor of Kentucky claimed to have been deprived of property—namely, his political position—without due process of law, since, he averred, the recount election ousting him from office was marred by voter fraud." *Velez*, 401 F.3d at 86 (describing *Taylor*). The Court rejected his claim in short order, stating "[t]he decisions are numerous to the effect that public offices are mere agencies or trusts, and not property as such . . . . [G]enerally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right." *Taylor*, 401 F.3d at 577–88 (concluding plaintiff-official had been "denied no right secured by the 14th Amendment"). As the Second Circuit recounted, "[i]n *Snowden*, the [Supreme] Court, reaffirming *Taylor*, again asserted that elected offices cannot constitute 'property' within the meaning of the Fourteenth Amendment:"

> More than forty years ago this Court determined that an unlawful denial by state action of a right to state political office is not a denial of a right of property . . . secured by the due process clause. *Taylor and Marshall v. Beckham*, 178 U.S. 548 [(1900)]. Only once since has this Court had occasion to consider the question and it then reaffirmed that conclusion, *Cave v. State of Missouri ex rel. Newell*, 246 U.S. 650 [(1918)], as we reaffirm it now.

*Velez*, 401 F.3d at 86 (quoting *Snowden*, 321 U.S. at 7). "The Court's pronouncements in *Taylor* and *Snowden* have since been echoed in numerous decisions." *Id.* (citing *Burks v. Perk*, 470 F.2d 163, 165 (6th Cir. 1972) (per curiam) ("Public office is not property within the meaning of the Fourteenth Amendment.") (citing *Taylor* ); *Rabkin*

9

*v. Dean*, 856 F. Supp. 543, 549 (N.D. Cal. 1994) (asserting that elected officials are not "employees" in the traditional sense, and hence do not hold a property interest in their positions); *Sweeney v. Tucker*, 473 Pa. 493, 524, 375 A.2d 698 (1977) (rejecting legislator's property interest claim, and noting that, because an elected official "holds office for the benefit of his constituents and cannot justifiably rely on a private need or expectation in holding office," an elected office "is a public trust, not the private domain of the officeholder."); *Guzman Flores v. Coll. of Optometrists*, 106 F. Supp. 2d 212, 214 (D.P.R. 2000) (relying on *Taylor* and *Snowden* to dismiss a property interest claim put forth by a candidate for public office, and stating, "the Supreme Court squarely addressed the issue now before the Court and held that there was no due process right to seek election to public office . . . . Therefore, Guzman does not have a valid due process claim in the instant case.")).

For at least these reasons, Plaintiff's pleaded claims of violations of procedural due process cannot reasonably support awarding preliminary injunctive relief.

## CONCLUSION

In sum, Plaintiff has not established a likelihood of success of the merits or a serious question on the merits to warrant preliminary injunctive relief. Plaintiff is afforded leave to amend his March 9, 2026 complaint within 30 days of this Decision and Order. If Plaintiff elects not to timely file a second amended complaint, the Court will proceed to referring the case to a magistrate judge in light of Defendants' March 23, 2026 answer.

## ORDER

IT IS HEREBY ORDERED that Plaintiff's motion for a TRO and a preliminary injunction, ECF No. 4, is DENIED; and it is further

ORDERED that Plaintiff may file a second amended complaint as directed above **within thirty (30) days of this Decision and Order**; and it is further

ORDERED that if Plaintiff does not file a second amended complaint **within thirty (30) days of this Decision and Order**, the Court shall refer the case, with Plaintiff's March 9, 2026 complaint being the operative pleading, to a magistrate judge; and it is further

ORDERED that pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Plaintiff must immediately notify the Court in writing each time her address changes. Failure to do so may result in dismissal of the action with prejudice.

SO ORDERED.

Dated: April 24, 2026
       Rochester, New York

                                      HON. MEREDITH A. VACCA
                                      UNITED STATES DISTRICT JUDGE

11